## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| FLOYD SOMMERVILLE, | ) |
| | ) |
| Movant/Defendant, | ) |
| | ) |
| v. | )    2:04-cr-00301-LSC-JEO |
| | )    2:06-cv-08036-LSC-JEO |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## <u>MEMORANDUM OPINION</u>

The above-captioned matter is before the Court on the defendant's motion and amended motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  (06-8036 (Doc. 1 & 9)).[1]  Upon consideration of the same, the Court finds that the motions are due to be denied.

### I.  BACKGROUND

### A.  Procedural History

The defendant was indicted on a single count of possessing firearms after being convicted of a felony in violation of 18 U.S.C. § 922(g)(1).  (Indictment (04-0301 at Doc. 1)).  The defendant was arraigned in this case and pled not guilty on August 12, 2004.  Mr. Bart Slawson entered his appearance as counsel on behalf of the defendant on the same day.

Mr. Slawson filed, among other things,[2] a motion to suppress the evidence, including the firearms recovered during a traffic stop and any statements made by the defendant.  (04-0301 at Doc. 5).  Following a hearing on the motion, the magistrate judge assigned this case filed a

---

[1]References herein to "04-0301" are to the original criminal case number and to "06-8036" are to the post-conviction civil proceedings.

[2]Counsel filed a motion to dismiss the indictment on due process grounds.  (04-0301 at Doc. 4).  The magistrate judge found that the motion was due to be denied.  *Id.* at Doc. 22.

"Report and Recommendation," finding that the motion was due to be granted in part and denied in part. *Id*. at Doc. 23. No objections were filed by either party.

The defendant next executed a written plea agreement and pled guilty on December 1, 2004. A presentence investigation was conducted. *Id*. at Doc. 30. The defendant was sentenced on March 22, 2005, to the custody of the Bureau of Prisons for 210 months to be followed by 60 months supervised release. *Id*. at Doc. 32.

The defendant filed a timely notice of appeal. *Id*. at Doc. 33. Present counsel, Mr. John Bivens, filed a motion to be substituted as counsel for the defendant. *Id*. at Doc. 39. The motion was granted and Mr. Bivens has been representing the defendant since June 3, 2005. The only issue raised on appeal was that trial counsel was ineffective. *Id*. at Doc. 49. On May 18, 2006, the Eleventh Circuit Court of Appeals issued an opinion finding that "[t]he record is not sufficiently developed to allow [the court] to review Somerville's claims of ineffective assistance of counsel." *Id*.

On July 30, 2006, the defendant submitted his motion to vacate his plea and sentence. Therein, he asserts that his trial counsel was ineffective in that (1) he failed to properly investigate the case and prepare a defense and (2) he failed to undertake the necessary steps to suppress certain incriminating statements made by the defendant. (06-8036 at Doc. 1). The magistrate judge assigned this matter ordered that the United States of America appear and show cause why the requested relief should not be granted. The United States filed a response ("Gov. Response" (06-8036 at doc. 3)), asserting that the motion is without merit. The defendant filed a response. ("Def. Response" (*id*. at doc. 7)). The defendant also filed a motion to amend his initial motion to vacate to allege that the trial court misapplied the Sentencing Guidelines and

that his trial counsel was ineffective in failing to challenge the application of the Guidelines by

the court.  ("Am. Motion" (*id*. at doc. 9)).  The United States has filed a response to the same.  *Id.*

at Doc. 10.

## B.  Offense Conduct

The relevant offense conduct for purposes of the present motions is in most respects

undisputed.

On July 8, 2004, Bessemer Police Officer Ernest Ryan conducted a traffic
stop on Interstate 20/59, when he observed the driver of a 1996 white-colored
Dodge Stratus following too closely behind a tractor trailer and veering off the
roadway.  The driver identified himself as Floyd Somerville from Saint Albans,
New York.  Accompanying Somerville was a female passenger named Niya S.
Haynes, who also resides in New York.

Approaching the defendant's car from the passenger side, Officer Ryan
asked Somerville for his driver's license.  The defendant said that he thought his
license was in the back seat.  When Somerville exited his vehicle to look for the
license, Officer Ryan noticed a bulge in Somerville's back pocket.  The officer
consequently performed a pat-down search and discovered the object to be
Somerville's wallet.  The defendant removed the wallet from his pocket, reached
inside, and produced a driver's license, which was suspended at the time.  The
defendant explained that the suspension had resulted merely from his failure to
pay child support in the State of New York.  Officer Ryan returned the license to
Somerville, gave him an oral warning, and advised him that he was free to go.
Seconds later, Ryan asked for permission to search Somerville's car for guns and
drugs.  According to the officer, both Niya Haynes and Somerville gave verbal
consent.

By this time, a second patrol officer, Christian Clemons, had arrived at the
scene to "back-up" Officer Ryan and to assist in the search.  As the search was
about to get underway, the defendant informed the officers that the trunk could
not be accessed from the outside; so, he lowered a portion of the back seat,
reached through the opening, and "popped" the trunk lid.  Inside the trunk was
some luggage, which Somerville said belonged to him.

Looking inside one of the bags, Officer Clemons found a loaded .25
caliber Titan semi-automatic pistol that had been stuffed inside a man's tennis

3

shoe.  Continuing his search, the officer then looked inside a hanging bag, where he found three more handguns: a .380 caliber Bryco semi-automatic pistol, a Hi-Point .380 caliber semi-automatic pistol that was wrapped up in a man's shirt, and a Hi-Point .40 caliber semi-automatic pistol that was inside a cardboard firearms box.  Also discovered in the trunk were rounds of .25 and .380 caliber ammunition.  When it was determined that the Bryco firearm had been reported stolen in Tuscaloosa County, Alabama, Somerville was placed under arrest for Receiving Stolen Property.  As he was being handcuffed, the defendant spontaneously remarked that he was taking the guns to Birmingham.

The defendant was escorted to Officer Clemons' police car and placed [sic] the back seat.  Officer Clemons then sat down in the front seat and advised Somerville that because the officers did not know who the guns belonged to the female passenger (Nyia Haynes) would probably be arrested, too.  Without further comment from the officer, Somerville spoke up, admitting ownership of all the firearms.  At that point, Officer Clemons stopped the defendant from making any additional statements and immediately advised him of the *Miranda*[3] rights.  Officer Clemons then asked Somerville if he still wanted to make that statement.  The defendant replied that he did and, thereafter, reiterated his claim.[ ]  Somerville's admission was confirmed by Niya Haynes, who told police that the guns belonged to him and that she was not even aware the pistols were in the car.

Later that same day, ATF&E Agents Alicia Hanne and Ed Hull attempted to interview Somerville at the Bessemer City Jail.  The defendant was advised of his rights and given a waiver of rights form to sign.  After signing the upper portion of the form, Somerville stopped and said that he would talk to the agents, but that he would not sign the form.  When Agent Hull asked him why, the defendant said that all he had to say was that he had purchased the guns, but did not know that one of them was stolen.  Somerville then asked for counsel, at which time the interview was terminated.

A subsequent search of the defendant's criminal history revealed that at the time of his arrest in Birmingham, Somerville was a felon, having been convicted of nine (9) counts of Robbery, First Degree, in the state of New York.

(06-8036, Doc. 3 at pp. 4-7) (footnote omitted).

---

[3]*Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

## II.  DISCUSSION

### A.  Ineffective Assistance of Counsel Concerning the Plea

#### 1.  The Applicable Standard

The defendant first alleges that his counsel was ineffective.  Specifically, he asserts that

his trial counsel failed to properly investigate and prepare his defense and that he failed to

properly pursue the suppression of certain evidence.  (06-8036 at Doc. 1).  The United States

retorts that the claims are without merit.  *Id.*, Doc. 3 at pp. 7-21.

> A convicted defendant's claim that counsel's assistance was so defective
> as to require reversal of a conviction or . . . sentence has two components.  First,
> the defendant must show that counsel's performance was deficient.  This requires
> showing that counsel made errors so serious that counsel was not functioning as
> the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the defense.  This
> requires showing that counsel's errors were so serious as to deprive the defendant
> of a fair trial, a trial whose result is reliable.  Unless a defendant makes both
> showings, it cannot be said that the conviction or . . . sentence resulted from a
> breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).

The defendant must satisfy two requirements to prevail on an ineffective assistance of counsel

claim.  He must show that "(1) 'counsel's representation fell below an objective standard of

reasonableness,' *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064, and that (2) 'there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different,' *id*. at 694, 104 S. Ct. at 2068.  In this circuit, we have referred to the

latter element as the 'prejudice' prong and the former element as the 'performance' prong."

*Reece v. United States*, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997).  When considering such

claims, a court need not address both components because a failure to demonstrate either prong

5

constitutes a failure to demonstrate ineffective assistance of counsel.  *Bottoson v. Moore*, 234

F.3d 526, 532 (11th Cir. 2000); *see also Reece*, 119 F.3d at 1464 n.4.

In examining the first prong under *Strickland*, the Eleventh Circuit has articulated the

relevant considerations as follows:

> The standard for counsel's performance is reasonableness under prevailing
> professional norms.  The purpose of ineffectiveness review is not to grade counsel's
> performance. . . .  To state the obvious: the trial lawyers, in every case, could have done
> something more or something different.  So, omissions are inevitable.  But, the issue is
> not what is possible or what is prudent or appropriate, but only what is constitutionally
> compelled. . . .  The petitioner must establish that particular and identified acts or
> omissions of counsel were outside the wide range of professionally competent assistance.

> Courts must indulge [the] *strong presumption* that counsel's performance was
> reasonable and that counsel made all significant decisions in the exercise of reasonable
> professional judgment.  Thus, counsel cannot be adjudged incompetent for performing in
> a particular way in a case, as long as the approach taken might be considered sound trial
> strategy.  Given the strong presumption in favor of competence, the petitioner's burden of
> persuasion – though the presumption is not insurmountable – is a heavy one. . . .
> [B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the
> conduct was unreasonable, a *petitioner must establish that no competent counsel would
> have taken the action that his counsel did take*. . . .

> In reviewing counsel's performance, a court must avoid using the distorting
> effects of hindsight and must evaluate the reasonableness of counsel's performance from
> counsel's perspective at the time.  [I]t is all too easy for a court, examining counsel's
> defense after it has proved unsuccessful, to conclude that a particular act or omission of
> counsel was unreasonable.

*Johnson v. Alabama*, 256 F.3d 1156, 1176-77 (11th Cir. 2001) (quoting *Chandler v. United*

*States*, 218 F.3d 1305, 1313-16 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204, 121 S.

Ct. 1217, 149 L. Ed. 2d 129 (2001)) (citations and internal quotation marks from *Chandler*

omitted in *Johnson*) (emphasis added).

With regard to the second prong under *Strickland*, it is not enough to show that an error

had some conceivable effect on the outcome of the proceeding.  *Robinson v. Moore*, 300 F.3d

1320, 1343-44 (11th Cir. 2002).  To succeed on an ineffective assistance claim, the defendant

must show that, but for counsel's unprofessional errors, the outcome of the proceeding would

have been different.

## 2.  Analysis

### a.  Failure to Investigate

In arguing the failure to investigate and prepare a defense claim, the defendant asserts that

if counsel had properly investigated the case, he would have discovered witnesses that were

available to testify that the defendant had no way of knowing there were firearms in the trunk of

the car.  (06-8036, Doc. 1 at p. 2).  He also alleges that because counsel did not investigate the

case and prepare a defense, he had "no alternative but to plead guilty."  *Id*.  He further asserts as

follows:

> There was at least one witness available to testify that the firearms in the
> trunk of the car Somerville was driving were the [sic] purchased by the witness
> the night before Somerville's arrest and that the witness left the guns in the trunk
> of the vehicle Somerville was driving at the time of his arrest.  The witness would
> have also testified that, to his knowledge, Somerville was not aware of the
> firearms [sic] presence inside luggage inside the trunk of the car he was driving
> . . . .  This witness, and potentially others, would have refuted the necessary
> element of constructive possession: knowledge of the item's presence. . . .

*Id*. at p. 3 (citations omitted).  In support of this claim, the defendant attaches the affidavit of

Terry Colbert.  It states, in pertinent part, as follows:

> I am aware that Floyd Somerville, Jr., has been convicted of possession of
> four guns that were in a vehicle driven by him on July 8, 2004.  This affidavit is
> given at the request of counsel for Floyd Somerville, Jr., in lieu of trial testimony.
>
> I purchased two of the guns during a stay of Floyd Somerville, Jr., in
> Northport, Alabama, just before he was to return to New York.  The two guns that
> I purchased were the Highpoint automatic .380 pistol . . . and Highpoint automatic

.40 pistol. . . .  I have receipts for the purchase of these items in my possession dated July 6, 2004.

I was never contacted by trial counsel to obtain information on these items and was not interviewed by anyone regarding how these items got into the vehicle. . . .

When I purchased [the] two guns, I placed them in the trunk of the 1994 Dodge automobile while we completed our visits with mutual friends and their relatives.

On the night of July 7, 2004, we hung out until late that night and I went home to bed after we planned to meet the next day.  I did not remove the guns from the car that night because I forgot they were in the trunk of the Dodge.

I called Somerville about 10:00 a.m. and he stated that he was on the road (driving back to New York).  I planned to get the guns the next morning, however, Floyd Somerville, Jr., left early the next morning.  I did not get a chance to get the guns [out] of the vehicle.

I did not see any guns in the vehicle when I placed my guns in the vehicle's trunk

I do not believe that Floyd Somerville, Jr., knew, at the time that he was driving to New Your [sic], that the guns were in the trunk of the vehicle driven by him.

(Colbert Aff. at pp. 1-2).[4]

The United States retorts: (1) "his claim is entirely undermined by the verbal responses [t]he [defendant] gave the district court when he entered his plea of guilty;" (2) Somerville has presented nothing in his motion to demonstrate that counsel committed an unprofessional error; and, (3) "even if Colbert's name had been known to counsel, no rational defendant (and attorney) would . . . have pursued a jury trial basing his defense on this person's assistance."  *Id*., Doc. 3 at

---

[4]The affidavit is attached to the original motion to vacate as an exhibit.  (06-8036, Doc. 1 at Ex. C).

pp. 8-12.  In support of its position, the United States attaches the affidavit of trial counsel.  *Id*. at

Attachment 1 ("Slawson Affidavit").

        In his response, the defendant asserts that there is a material dispute between his

recollection of the pre-plea events and those of his counsel.  *Id*., Doc. 7 at p. 2.  He also states

that the plea transcript should not be determinative because "he was scared at the plea hearing

and he did not realize that he had any other remedy or choice at the time."  *Id*. at p. 5.  He offers

his affidavit in support of these contentions.  *Id*., Doc. 7 at Attachment 1 ("Somerville

Affidavit").

        Upon full consideration of this matter, the Court finds that the defendant is entitled to no

relief for a number of reasons.  First, the United States is correct that the defendant did not voice

any dissatisfaction with counsel at the plea hearing.  To the contrary, the record indicates his

satisfaction with counsel:

> THE COURT:    Let's talk about your lawyer for just a minute before we move on.
> Mr. Slawson is standing there beside you.  How has he done as an
> attorney for you, has he done a good job?
>
> SOMERVILLE: Yes.
>
> THE COURT:    Sir?
>
> SOMERVILLE: Yes.
>
> THE COURT:    Any complaints or problems that you have with him?
>
> SOMERVILLE: No.
>
> THE COURT:    Has he met with you enough times that you feel like he has
> explained all the documents and everything that you're
> encountering in this proceeding?
>
> SOMERVILLE: Yes.

9

THE COURT:    Has he been able to explain those documents when you've asked him questions?

SOMERVILLE:  Yes.

THE COURT:    Did he spend what you think to be a sufficient amount of time investigating any possible defenses that you might have to the charges against you?

SOMERVILLE:  Yes.

(04-0301, Doc. 37 at pp. 4-5). These sworn statements by the defendant cannot, and should not, be ignored by the Court. They clearly demonstrate the defendant's satisfaction with counsel. They also confirm that they met and discussed the defendant's situation and his options. These statements similarly are consistent with the affidavit of trial counsel concerning his representation of the defendant. These statements "constitute a formidable barrier in a[ ] subsequent collateral proceeding" such as this. *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).

Second, the defendant has not demonstrated that counsel's performance was deficient. Trial counsel states in his affidavit that he thoroughly investigated this case by questioning the defendant, speaking to the police officers that were involved, and reviewing all video tapes and other evidence. (Slawson Affidavit at ¶¶ 4-5, 8). Mr. Slawson further states in his affidavit that he repeatedly asked the defendant for ". . . names, addresses, phone numbers, or anything that would help him investigate Somerville's claim that he did not know that the firearms were in his luggage." *Id*. at ¶ 5. Somerville, however, never provided any pertinent information. *Id*. Other than the affidavit of Colbert, the defendant has offered no other affidavits or names of purported

10

exculpatory witnesses.  Additionally, the defendant's affidavit does not dispute this assertion by defense counsel.  *See* 06-8036, Doc. 7 at Floyd Somerville Aff.

With regard to Colbert as a defense witness, Mr. Slawson states that he never knew of this witness until the post-conviction proceedings.  (Slawson Aff. at ¶ 5).  Nothing before the Court disputes this, including the defendant's affidavit.  *See* 06-8036, Doc. 7 at Floyd Somerville Aff.  Accordingly, counsel cannot be faulted for failing to locate and talk with this witness.  Additionally, even if counsel should have located and talked with this witness, as will be discussed immediately below, the defendant cannot satisfy the prejudice prong for relief under *Strickland*.

Third, even if counsel was aware of Colbert's name and information, that would not have been sufficient to assist the defendant under the circumstances.  At most, Colbert's affidavit accounts for two of the firearms found in the defendant's possession (*i.e.*, the Highpoint .380 and .40 pistols).  It does not account for the defendant's illegal possession of the .25 caliber Titan semi-automatic pistol that was stuffed inside a man's tennis shoe, the stolen .380 caliber Bryco semi-automatic pistol that was found inside a hanging bag, and the .25 and .380 caliber ammunition found in the trunk.

The United States correctly points out that to support a conviction under § 922(g)(1) the jury must only be convinced that the defendant possessed one weapon.  Ownership is not the issue.  *See generally*, *United States v. Sweeting*, 933 F.2d 962, 965 (11th Cir. 1991) ("substantial evidence of linkage of the [defendants] to the firearms supports the possession element.  Possession may be either actual or constructive.").  Colbert's affidavit only accounts for two of

the firearms, which is far short of exculpating the defendant from the charge of conviction. Accordingly, Colbert's testimony would be of no real benefit to the defendant.

Additionally, Colbert's affidavit strains credulity because it does not explain how the two guns ended up in the hanging bag with the other gun. Still further, it does not explain the defendant's statement that the luggage belonged to him and that he was taking the guns to Birmingham.

It is evident based upon the record before the Court that the defendant is entitled to no relief on this aspect of his ineffective assistance of counsel claim. The claim, therefore, is due to be denied.

### b.  Motion to Suppress

The defendant next argues that his attorney failed to adequately pursue the suppression of certain incriminating statements made by him during the course of the traffic stop. Specifically, he contends that counsel's assistance was constitutionally deficient in that he failed (1) to argue or elicit testimony at the suppression hearing ". . . that would have. . . likely result[ed] in the suppression of the evidence in this case;" (2) to ". . . address[ ] whether or not Somerville was properly *Mirandized*;" (3) to ". . . address [ ] the constitutionality of [the] police questioning Somerville regarding the luggage in the trunk;" and, (4) "to make written objections to the magistrate's partial denial of [his] motion to suppress."  (06-8036, Doc. 1 at p. 3).  Somerville argues that as a result of this last omission, he was prevented from attacking the magistrate's factual findings on appeal.  *Id*. at p. 4.

The relevant evidence before the Court concerning this claim shows that this case arises from a typical traffic stop. After the defendant was told he could go with just an oral warning,

12

Officer Ryan asked for permission to conduct a search of the car for guns and weapons. Both the defendant and the passenger freely and voluntarily consented. There was nothing coercive about the interaction. (04-0301, Doc. 23 at p. 5). This is further demonstrated by the defendant's assistance to the officers in obtaining access to the trunk area. The defendant voluntarily told the officers that the luggage belonged to him. The weapons were discovered with the luggage. Because one of the guns had been reported stolen, the defendant was arrested on the charge of receiving stolen property. As he was being handcuffed, the defendant told the officers that he was "taking the guns to Birmingham." *Id*. at p. 3.

When the defendant was placed in the back of Officer Clemons' patrol car, Clemons told him that, because the officers did not know who owned the guns, the passenger, Niya Haynes would probably be arrested. Without further comment from the officer, the defendant stated that the guns belonged to him. Clemons stopped the defendant from making any additional statements and immediately advised him of his *Miranda* rights. Officer Clemons then asked Somerville if he still wanted to make that statement. The defendant replied that he did and, thereafter, reiterated his claim. *Id*.

The defendant was taken to the Bessemer City Jail where he was later interviewed by ATF Special Agents. The defendant again was advised of his *Miranda* rights and given a waiver of rights form to sign. After executing the upper portion of the form, the defendant stopped and said that he would talk to the agents, but that he would not sign the form. When he was asked why he would not sign the form, the defendant said that all he had to say was that he had purchased the guns, but did not know that one of them was stolen. Somerville then asked for counsel, at which time the interview was terminated.

13

Defense counsel filed a motion seeking suppression of all oral statements made by the defendant during the traffic stop.  At the hearing on the motion, the United States called the arresting officers, both of whom were cross-examined by defense counsel.  The magistrate judge found the defendant's first comment ("[I was] taking the guns to Birmingham") to have been made spontaneously, and, thus, admissible at trial.  (04-0301, Doc. 23 at pp. 6-7).  He further found the second and third statements, that the guns belonged to him and not the passenger, were due to be suppressed.  *Id*. at pp. 7-13.  The admissible statements included that (1) the luggage belonged to him; (2) he was taking the guns to Birmingham; and (3) he purchased the guns, but he did not know that one of them was stolen.

The defendant's motion to vacate in no way demonstrates that counsel was ineffective in his handling of the suppression issues.  To the contrary, his actions in winning a favorable ruling on at least two of the statements demonstrate his effectiveness and his attention to detail.  Additionally, the present motion does not show any error concerning the determination on the suppression issues.  Considering the defendant's continued inability to explain the presence of at least two of the weapons and the ammunition, his admissible inculpatory statements, and his lengthy criminal history, counsel had nothing to work with under the circumstances in defending Somerville.

The defendant asserts in his second contention that counsel committed error by failing to argue or elicit testimony addressing whether the police had properly *Mirandized* him.  It is true that counsel did not cross-examine the government's witnesses in detail on this particular point; however, he was still effective in that he received a favorable ruling on the only statements that implicate *Miranda* – the statements made while the defendant was in the patrol car at the scene

14

of the arrest.[5]  Additionally, nothing before the Court suggests that the officer did not fully

inform the defendant of his *Miranda* rights.

With regard to the third contention in this claim, that counsel erred in failing to argue or

elicit testimony addressing the constitutionality of the officers' questions regarding the

ownership of the luggage in the trunk, the Court finds the challenge to be without merit.  At the

time the police inquired as to the ownership of the bags, the defendant was not in custody; the

officers were merely conducting a consensual search following a lawful traffic stop.  His consent

to the search was freely and voluntarily given.  Nothing in the record or the present motion

indicates otherwise.  The officers were under no legal duty to provide *Miranda* warnings at that

juncture.  The absence of *Miranda* warnings at that point is not a basis for relief.

With regard to the fourth and final contention in this claim, that counsel erred by failing

to file written objections to the factual findings contained in the "Report and Recommendation,"

the Court finds the same to be without merit.  The Court has reviewed the magistrate judge's

"Report and Recommendation" and finds that counsel did not err in failing to object.  His

decision to pursue a plea was reasonable under the circumstances.  Nothing presented even at this

late date warrants a rejection of the findings of the magistrate judge.  Counsel's conduct was

reasonable and "well within the range of competence demanded of attorneys in criminal cases."

*Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).  Because the

defendant has not demonstrated any constitutional deficiencies, he is entitled to no relief.[6]

---

[5]*See United States v. Suggs*, 755 F.2d 1538, 1541 (11th Cir. 1985) (noting voluntary, incriminating statements not made in response to police questioning are admissible).

[6]The Court also notes that the defendant has offered nothing that brings into question the admissibility of the defendant's later statement to the ATF Special Agents that he had purchased the guns, but he did not know that they were stolen.

**B.  Sentencing Issues**

        In his amended motion to vacate, the defendant also asserts that the Court misapplied the

Sentencing Guidelines and trial counsel was ineffective in failing to object to the calculation of

the Guidelines and the ultimate sentence that was imposed.  (06-8036 at Doc. 9).  Specifically,

the defendant asserts that the presentence report fails to "consolidate" his May 11, 1987, robbery

pleas under U.S.S.G. § 4A1.2, resulting in an improperly increased sentencing range as an

"armed career offender."[7]  *Id*. at pp. 3-5, 9-10.  Accordingly, he argues that his 210-month

sentence was erroneously calculated and is due to be reduced.  The United States responds that

the defendant was not sentenced as an "armed career offender," but properly was sentenced as an

"armed career criminal" under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4.  (06-8036, Doc. 10 at p.

5).

        Despite his contentions, the defendant was not sentenced as an "armed career offender."

He was sentenced as an "armed career criminal."  *See* (Presentence Report (04-0301 at doc. 30)

at § 25; 18 U.S.C. § 924(e) & U.S.S.G. § 4B1.4).  In order to qualify for such an enhancement,

the defendant (1) must violate § 922(g) and (2) have "three previous convictions for a violent

felony or a serious drug offense, or both, *committed on occasions different from one another*."

18 U.S.C. § 924(e) (italics added).

        The pertinent issue is not whether the Court properly characterized his prior convictions

as "related" when determining his criminal history score because the defendant was not

sentenced as an "armed career offender."  The issue is whether he meets the requirements under

_____

        [7]The use of the term "armed career offender" is misleading as the Guidelines use the term "career offender" (see
U.S.S.G. § 4B1.1) and "armed career criminal" (see U.S.S.G. § 4B1.4).

18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4 to qualify as an "armed career criminal."  Accordingly, the Court will now consider whether the defendant, prior to committing the instant offense, had been convicted of at least three violent felonies and/or serious drug offenses "committed on occasions different from one another."  U.S.S.G. § 4B1.4, comment. (n.1).[8]

The presentence report (04-0301 at doc. 30) and the supporting New York court records show that the defendant previously had been convicted of at least three violent felonies.  The report shows that the defendant had the following first degree robbery convictions before his conviction in the instant case:

| COURT | DATE OF OFFENSE | PLEA DATE | PSR ¶ |
|---|---|---|---|
| 1. Kings Co., NY<br>Ind. No. 6171/86 | 05/22/86 | 04/20/87 | 32 |
| 2. Kings Co., NY<br>Case No. 6113/86 | 08/10/86 | 04/20/87 | 33 |
| 3. Kings Co., NY<br>Case No. 6113/86 | 08/16/86 | 04/20/87 | 33 |
| 4. Kings Co., NY<br>Case No. 6113/86 | 12/30/85 | 04/20/87 | 33 |
| 5. Kings Co., NY<br>Case No. 6113/86 | 12/30/85 | 04/20/87 | 33 |
| 6. Kings Co., NY<br>Case No. 6113/86 | 05/19/86 | 04/20/87 | 33 |
| 7. Kings Co., NY<br>Case No. 6113/86 | 08/11/86 | 04/20/87 | 33 |

_____

[8]The first requirement was satisfied when the defendant pled guilty to the indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

17

| 8. | Kings Co., NY Case No. 6113/86 | 08/11/86 | 04/20/87 | 33 |
| 9. | Kings Co., NY Case No. 6113/86 | 08/27/86 | 04/20/87 | 33 |
| 10. | Queens Co., NY Case No. 06981-86 | 08/29/86 | 03/10/87 | 34[9] |

Eleventh Circuit precedent is clear that if a defendant has prior qualifying offense conduct occurring on separate days, each is to be counted separately even if the defendant enters a plea of guilty at the same time on the charges. *See United States v. Owens*, 15 F.3d 995, 998 (11th Cir. 1994) (holding that a defendant who is convicted for three crimes, although all were disposed of in a single proceeding, was subject to § 924(e) enhancement because the crimes were temporally distinct and, therefore, not related); *United States v. Howard*, 918 F.2d 1529, 1538 (11th Cir. 1990) (holding that § 924(e) does not require separate indictments; the final conviction under § 922(g) must merely be preceded by three convictions for crimes that are temporally distinct). Applying that precedent to this case, the Court finds that the defendant is an "armed career criminal." The defendant unequivocally qualified for and was properly sentenced under the provisions of § 4B1.4.[10]

## C. Ineffective Assistance of Counsel at Sentencing

To the extent that the defendant contends he was denied effective assistance of counsel when his attorney failed to object to the increased sentence resulting from the Court's application

---

[9]The defendant was sentenced on the first nine robberies on May 11, 1987, and on May 12, 1987, on the tenth robbery. (PSR at ¶¶ 32-34).

[10]Even if the offense conduct reflected in paragraphs 4-5 and 7-8 above, which occurred on the same date, constitutes two rather than four qualifying offenses, the defendant's robbery convictions are more than sufficient to show that he had been previously convicted of at least three violent felonies at the time he entered his guilty plea in the instant case.

of the "armed career offender", the Court finds the claim to be without merit.  (06-8036, Doc. 9

at p. 9).  The foregoing discussion makes it clear that the defendant cannot show that counsel's

conduct fell below an objective standard of reasonableness and that he suffered prejudice.  *Hill*,

474 U.S. at 57.  He was properly sentenced and is entitled to no relief on this claim.

### III.  CONCLUSION

Premised on the foregoing, the defendant's motion to vacate his conviction and sentence

and the amended motion are due to be denied.  An order in accordance with this finding will be

entered.

Done this 15<u>th</u> day of <u>May 2008</u>.


_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671